IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERANDA ASSOCIATES, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-11-4206 |
| | § | |
| MICHAEL HOOPER, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER OF REMAND AND AWARD OF FEES AND COSTS**

Pending before the Court in the above referenced cause, alleging breach of contract and removed from the County Court at Law Number 1, Fort Bend County, Texas on diversity jurisdiction, are the following motions: (1) Plaintiff Veranda Associates, L.P.'s emergency motion requesting necessary orders (a) to compel discovery, (b) to extend the time to conduct discovery, (c) to remand, and (d) for sanctions (duplicatively filed as instruments #4 and 5); and (2) Defendant Michael Hooper's motion to strike #4 and 5 for objectionable content[1] and failure to comply with the requirements of the Local Rules[2] (#8).

After reviewing the record and the applicable law, this Court concludes that Plaintiff's motion to remand should be granted and

---

[1] Federal Rule of Civil Procedure 12(f) permits the Court to strike from a pleading any "redundant, immaterial, impertinent, or scandalous matter."

[2] Local Rule 11.4 allows the Court to strike a paper that "does not conform to local or federal rules or is otherwise objectionable."

-1-

that Plaintiff's counsel is entitled to an award of fees and costs under 28 U.S.C. § 1447(c).

**Plaintiff's Emergency Motion for Necessary Orders**

Plaintiff, Defendant Michael Hooper's ("Hooper's") lessor and landlord, claims that its commercial tenant, Hooper, fled in the middle of the night and left Plaintiff with a multi-year lease on which $300,000 remains unpaid.  After attempting for months to find and serve Hooper, Plaintiff finally found him and served him with this action while the case was pending in state court.[3]  Plaintiff claims that Defendant refused to appear for his deposition even after Plaintiff served him with a Notice.  Plaintiff filed a motion for sanctions and to compel.  On the eve of the hearing set on that motion, December 14, 2011, Defendant removed the case to federal court.

Plaintiff further states that Hooper filed a "Notice of Removal" in state court on December 5, 2011, but did not file the removal papers in federal court until December 14, 2011, and did not serve Plaintiff with the federal paperwork until December 22, 2011.  Plaintiff complains that it is unclear what date is the deadline for it to file its motion to remand.

---

[3] Emphasizing Hooper's current Texas-based activities, Plaintiff states, "After months of searching and attempting to serve Mr. Hooper, Mr. Hooper was finally spotted finishing his daily workout at Lifetime Fitness in Katy, Texas.  He was followed while he was driving his Texas registered vehicle and found to be working out of an apartment in Katy, Texas where he was served with the lawsuit (*see* state court file)."

Plaintiff claims that the removal is a sham and this case should be remanded and sanctions imposed against Hooper because Hooper has lied to the court in claiming to be a citizen of New York (and diverse from Plaintiff, a citizen of Texas) in the removal papers, when he is actually a citizen of Texas. Plaintiff alleges numerous facts, with supporting documentation, dating back to 1998, to prove Hooper has been a citizen of Texas for more than a decade, including numerous times when he has sworn such under oath in public filings and in court.

Specifically *inter alia* Plaintiffs assert with supporting documents the following: (1) On May 23, 1998 Hooper married Russann Stacy under a marriage license purchased in Denton County, Texas (Exhibit 1); (2) on July 30, 1999 the Hoopers purchased a house together in McKinney, Texas, where they lived while Hooper went to Texas Wesleyan University's law school, from which he graduated in 2002 (Exhibits 2 and 3); (3) the Hoopers divorced in 2002 in the 366th District Court of Collin County, Texas (Exhibit 4) and Russann deeded the property to Defendant (Exhibit 5); (4) on August 28, 2003, after he had his 1999 Pontiac repossessed and was about to lose his house, Hooper filed for bankruptcy in the Northern District of Texas and swore that he was a resident of Texas and had been domiciled there for over 180 days (Exhibits 6 and 7); (5) on June 27, 2005, after failing to make his bankruptcy payments, Hooper lost his house (Exhibit 8); (6) on June 2, 2006

-3-

Hooper and Elleana Mann applied for a marriage license in Harris County, Texas, were married on June 11, 2005, and moved into a house at 5711 Sugar Hill, #11, Houston, Texas 77057 (Exhibit 9); (7) on February 6, 2007 Hooper and his wife moved to a house in Katy, Texas (Exhibit 10); (8) Hooper and his wife sold that residence on August 26, 2009 (Exhibit 11) after buying a house in Weston Lakes in Fulshear, Texas on August 1, 2008 (Exhibit 12); (9) in 2009 Hooper and his wife refinanced their Weston Lakes home (Exhibit #13), where he lives today; (10) Hooper owns real property in Harris County (Exhibit 14, Property Tax Statement); (11) after Hooper and his wife purchased the house in Weston Lakes, Hooper filed a lawsuit against the seller on behalf of his wife as her attorney of record in which he claimed, "In or around July, 2008, Mrs. Hooper, her husband, and daughter began seeking a house to purchase in Fulshear, Texas to reside in and raise their family" (Exhibit 15, ¶ 11)[4]; (12) Plaintiff filed this action on June 28, 2011 (Exhibit 19), and in July 2011, Defendant swore to a Texas Judge that he was a resident of Fort Bend, County; (13) Hooper has a history of not paying creditors (Exhibit 16, Abstract of Judgment by another landlord that Hooper failed to pay); (14) Hooper was sued in 2011 in Harris County, Texas and on July 8, 2011 in that

---

[4] Plaintiff asks the Court to take judicial notice of this statement, filed in cause number 09-DCV-173509. *Elleana Hooper v. Deutsche Bank, N.A,, et al.*, in the District Court of Fort Bend County (Ex. 15).

action he filed a motion to transfer venue to Fort Bend, County and swore under oath that he and his wife resided in Fort Bend, County, Texas (Exhibit 17 at 2, "defendants specifically plead that this case should be transferred to Fort Bend County because this was the county of National Titlenet's last office and the county of residence for both Michael Hooper and Elleana Hooper."); (15) Hooper swore under penalty of perjury that he was a resident of Texas on December 15, 2009 when he set up one of his many law firms under the name of The Hooper Law Firm, PC (Exhibit 18, Certificate of Formation Professional Corporation); (16) Hooper did the same when on October 11, 2011 when he changed the name of The Hooper Law Firm to The Law Offices of Michael Hooper and Associates, PC (Exhibit 21, Articles of Incorporation); (17) he uses these entities to get people to extend credit and discards them after he does not pay (Exhibit 22, Forfeiture of Charter of Michael Hooper and Associates, P.C. in Texas; Exhibit 23 Forfeiture of Charter of The Hooper Law Firm, P.C. in Texas); and (18) on October 12, 2011, the date when Defendant claimed he was not a resident of Texas, Hooper swore under oath to the Secretary of State, "The registered agent is an individual resident of the state [Texas] whose name is Michael R. Hooper." (Exhibit 20).

Therefore, because Hooper is a citizen of Texas, Plaintiff seeks a remand to the County Court at Law Number 1, Fort Bend County, Texas.

Alternatively, Plaintiff asks that if the Court is not already persuaded that Defendant has filed a sham, frivolous removal and that this case should be remanded immediately and that sanctions should be awarded, Plaintiff asks the Court in its motion to compel discovery to order Defendant to provide a number of specified documents within fourteen days and to produce himself and his wife for videotaped depositions with seven days of that production. Also Plaintiff moves for 60 days' additional time to conduct discovery before the Court rules on Plaintiff's motion to remand.

Plaintiff has produced evidence that Plaintiff's home, place of employment, assets' location, car registration, and center of his business, domestic, social, and civil life are in Texas.  It requests the Court to remand this action immediately after awarding sanctions for a frivolous removal under Federal Rule of Civil Procedure 11.

Plaintiff requests an attorney's fee award of $10,000 for its counsel' time and services relating to the removal and remand under Rule 11, supported by an affidavit from attorney Ron E. Frank (#6, Ex. 24).

### Hooper's Motion to Strike

Hooper moves to strike Plaintiff's emergency motion as "seven pages of seemingly irrelevant, disjointed, and inflammatory fact assertions that are not incorporated by any of the three separate motions" included in the emergency motion.  He complains that

Plaintiff ignores the local form rules of pleading as well as those designed to protect the privacy of individuals, including his children.  He accuses Plaintiff of "engag[ing] in smear tactics in a desperate attempt to show that, because it believes Defendant is a 'bad person' the Court should look past the rule of law and simply allow Plaintiff to get his way."  He charges Plaintiff with "false assertions and irrelevant exhibits," "many of which Defendant will show to be patently false," but does not.

Hooper also objects that Plaintiff's pleading does not comply with Local Rules, the Administrative Procedures for Electronic Filing, and General Order 2004-11.  Specifically he asserts that the motion fails to style the case properly and include the proper language in the motion caption (L.R. 10.1), that the motion is not paginated (L.R. 10.2), and that counsel fails to include his SDTX Bar Number (L.R. 11.3A(4).  As for the rules of electronic filing, the Administrative Procedures, because Plaintiff failed to redact the names of minor children and home addresses.  He complains that Plaintiff also published an unredacted color photograph of Hooper's children.

Finally Hooper complains that Plaintiff acted maliciously, with an intent to embarrass and harass Hooper and violate his privacy, as evidenced by its discussion that Hooper filed for

bankruptcy in 2003, a fact that has nothing to do with this case.[5]

This Court notes that under Federal Rule of Civil Procedure 12(f),

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Motions to strike are usually viewed with disfavor and rarely granted since they seek a drastic remedy and are frequently sought merely to delay.  *1st United Telecom, Inc. v. MCI Communications Services, Inc.*, Civ. A. No. 3:10-CV-2255-B, 2011 WL 2292265,*1 (N.D. Tex. June 8, 2011).  Such motions should be denied if there is any question concerning law or fact.  *Id.*  Even when addressing a pure question of legal sufficiency courts are "very reluctant" to determine such issues on a motion to strike, preferring to determine them "only after further development by way of discovery and a hearing on the merits, either on summary judgment motion or at trial."  5C Charles Alan Wright & Arthur R. Miller*, Federal Practice and Procedure* § 1381 (3d ed. 2004).  The Court has considerable discretion whether to grant a motion to strike.  *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993).

---

[5] The Court notes that Hooper conveniently ignores the fact that the bankruptcy documents show that he filed for bankruptcy in the Northern District of Texas, where he lived at the time, one more fact establishing that he is a Texas resident.

Usually portions of a complaint will not be stricken unless "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Veazie v. S. Greyhound Lines*, 374 F. Supp. 811, 815 (E.D. La. 1974).  Allegations are immaterial if they are shown to "have no possible bearing upon the subject matter of the litigation." *Sadler v. Benson Motors Corp.*, 1997 WL 266735, *1 (E.D. La. May 15, 1997).  "Scandalous" describes "any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."  2 *Moore's Federal Practice* § 12.37[3] at 12-97; *see also Cobell v. Norton*, 224 F.R.D. 266, 280 (D.D.C. 2004).  "[A] Rule 12(f) motion to dismiss is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1983).

Contrary to Hooper's objections, the documents and the allegations are directly relevant to the central issue of the removal, Hooper's citizenship and whether Hooper is diverse from Plaintiff, a Texas partnership, as well as to this Court's subject matter jurisdiction.  Moreover, while Hooper objects to Plaintiff's "smear tactics," his own submissions are hardly devoid of name calling. The Court does not find the allegations, supported by uncontroverted documents, to be scandalous or prejudicial to Defendant where they are accurately representative.  Thus the Court

denies the motion to strike.

### Hooper's Response to the Motion to Remand (#9)

Hooper's response to the motion to remand correctly points out that for purposes of determining diversity of jurisdiction, an individual's citizenship is equivalent to domicile.[6] *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954); *Preston v. Tenet Healthsystem Memorial M.C.*, 485 F.3d 793, 797-98 (5th Cir. 2007). *See Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)("[W]ith few exceptions, state citizenship for diversity purposes is regarded as synonymous with domicile."). It is well established that residence alone is not enough to prove citizenship. *Stine*, 213 F.2d at 448. Domicile is determined by a two-part test: (1) the residence of the party in a state and (2) the intent of the party to remain there. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 49 (1989). "[A] person who has the clear intent to change domicile does not accomplish the change until he is physically present in the new location with that intent. . . . In most cases, the difficult issue is not presence but whether the intent to change

---

[6] Courts have often opined that a person's domicile is "the place where the individual has a true, fixed home and principal establishment, and to which, whenever that person is absent from the jurisdiction, he or she has the intention of returning." 13E Charles A. Wright, *et al.*, Federal Practice & Procedure § 3612 at 523 (3d ed. West 2009). It "has both a physical and a mental dimension and is more than an individual's residence, although the two typically coincide." *Id.* at 523-27. A person has only one domicile for diversity purposes at a particular time even if he has several residences in different states. *Id.* at 528-29.

domicile can be shown." *Prot*, 85 F.3d at 250. "There is no
durational residency requirement in the establishment of domicile;
once the presence in the new state and intent to remain there are
met, the new domicile is instantaneously established." *Acridge v.
Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th
Cir. 2003).

Diversity jurisdiction must exist at the time a suit is filed
in state court, and, if it is removed, at the time of removal to
federal court. *Prot*, 85 F.3d at 248-49. Diversity jurisdiction
existing at these times will not be destroyed by subsequent changes
in citizenship of the extant parties. *Id.* at 249.

There is a presumption that a person's current residence is
also his domicile and that a married man is domiciled where his
wife and family live. 13E Charles A. Wright, *et al.*, Federal
Practice & Procedure § 3612 at 554-55.

"A person's domicile persists until a new one is acquired or
it is clearly abandoned. . . . There is a presumption in favor of
the continuing domicile which requires the party seeking to show a
change in domicile to come forward with enough evidence to that
effect to withstand a directed verdict." *Id.* at 250 (citations
omitted). "[T]he party attempting to show a change assumes the
burden of going forward on that issue. The ultimate burden on the
issue of jurisdiction rests with the . . . party invoking federal
jurisdiction," here Hooper. *Prot*, 85 F.3d at 251.

-11-

The court should examine a variety of factors in determining domicile, with none determinative, including the individual's place of voting registration, where he pays taxes, location of his real and personal property, his driver's and other licenses, bank accounts, membership in clubs and churches, where his places of business or employment are, and where he maintains a home for his family. *Id.* This Court notes, moreover, in determining whether diversity jurisdiction exists, the court may examine evidence in the record and receive affidavits, deposition testimony or live testimony regarding the facts underlying the citizenship of the parties. *Prot*, 85 F.3d at 249.

The Court further observes that the Fifth Circuit has also opined in *Prot*, "A litigant's statement of intent is relevant to the determination of domicile, but is entitled to little weight if it conflicts with the objective facts." *Id.* at 251. Thus aspects of Hooper's affidavit (#9, Exhibit 1), unsupported by corroborating evidence and controverted by documents submitted by Plaintiff, are not significant.

Hooper argues that Plaintiff has made no showing of his domicile at the time the suit was filed or at the time it was removed; in other words Plaintiff has failed to show that Defendant intended to change his domicile from New York to Texas. He points out that in the history of documents submitted by Plaintiff, there is a gap between 2005-2007. He claims he moved from Texas to New

York with his family then, established his domicile in New York, surrendered his Texas driver's license, obtained a New York driver's license, established an office in New York, and was admitted to the New York bar in 2006.  He contends that Plaintiff bears the burden of showing he subsequently intended to become a Texas citizen, but has not satisfied it.  Hooper provides his affidavit (Ex. 1) to establish the change in domicile to New York in 2006, which he claims moots all the documents Plaintiff has submitted to show his citizenship prior to 2007.  He further maintains that those that remain are not persuasive as to determining his domicile. (Plaintiff's Exhibit 10 shows Defendant executed a deed of trust on a Texas property; Exhibit 11 shows that he executed a deed of Texas property; Exhibits 12-13 showing he executed deeds of trust on Texas property; Exhibit 14 shows that Defendant owns a property on Allen Parkway, not in Fulshear, Texas as Plaintiff claims; regarding Exhibit 15, contrary to Plaintiff's allegation that Hooper made this statement in a lawsuit, Hooper maintains that he was not a party to the lawsuit and did not make the statement[7]; Exhibit 17, despite Plaintiff's claim that he swore

---

[7] The Original Petition in the suit, brought by Elleana Hooper against Deutsche Bank National Trust Company, *et al.*, stated, "In or around July, 2008, Mrs. Hooper, her husband, and daughter began seeking a house to purchase in Fulshear, Texas to reside in and raise their family."  The Court observes that the document reflects that Hooper was the attorney of record, signed and filed the Original Petition of Plaintiff Elleana Hooper, his wife, and the statement refers to him as her husband.  Moreover after this evidence of the couple's intent, the petition goes on

-13-

under oath that he was a resident of Texas, Hooper responds that he did state under oath that he was a "resident" of Fort Bend County, but residency is insufficient to prove citizenship, and Hooper's affidavit under oath swears that National TitleNet LC's office was in Fort Bend County, but makes no mention of its citizenship; Exhibits 18, 20, and 21 claim Defendant is a resident for the purpose of being a registered agent for his law firm, but Plaintiff again confuses residency with citizenship, and a corporation can only be a citizen of its state of incorporation and state of its "nerve center."

Hooper submits the following documents (Exhibit B) to show that he never intended to abandon New York as his domicile:  a redacted copy of his current New York driver's license, proof of ownership of property in New York, proof of his current registration as an attorney in New York, correspondence to his office in New York, a copy of a lease for the sole real property owned by Defendant in Texas, and a copy of deeds to properties in Katy and Fulshear showing that, contrary to Plaintiff's representations, Hooper does not own them.  He claims that all these evidence that, at the time the suit was filed and at the time it was removed, he was domiciled in New York, maintains Hooper.

---

to state that Plaintiff did purchase from Deutsche Bank National Trust Company a residential dwelling located at 32722 Whitburn Trail, Fulshear, Texas and closed on or about August 4, 2008, less than a month later.

**Hooper's Response to Plaintiff's Motion for Leave to**

**Conduct Discovery and For Sanctions (#10)**

Hooper points to the first part of Federal Rule of Civil Procedure 26(d)(1)("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) except . . . when authorized by these rules, by stipulation, or by court order." The scheduling conference for this suit is set on April 4, 2012, but the parties have not yet set a date for the 26(f) conference, which must be conducted no later than March 17, 2012. Moreover none of the situations requires that Court to grant leave here. He further states that he has resisted Plaintiff's request for an early deposition because he believes this suit is "a 'shakedown' filed solely for the purpose of harassment" and claims the complaint is "so vague as to render it nearly meaningless." No details are given regarding the address, date, and terms of the lease and no copy of the lease is attached to the petition. As noted earlier, in state court Hooper filed a special exception and Plaintiff changed the style to read Michael Hooper dba The Hooper Law Firm. Hooper suggests that Plaintiff did not file a copy of the lease because it wanted to sue National TitleNet LLC ("NTN"), which was the actual party to the lease, and that it wanted to take an early deposition to see if NTN was still in business and whether it had assets to satisfy a judgment. Hooper claims that Plaintiff's counsel did not know where NTN and its owners were, but

-15-

knew that Defendant had been NTN's attorney, so counsel "trumped up a bogus lawsuit so it could haul Defendant into a deposition to find out if there were any assets left at NTN for the vultures." He claims that after Plaintiff found that Defendant had discovered the ruse, it amended its petition and its style in this meritless lawsuit.

As for sanctions, Hooper insists that Plaintiff fails to provide a legal argument to support its "ridiculous" request for fees for forty hours of work from December 22, 2011, completed in less than 24 hours, with a trip to Dallas on December 23, 2011 to file his "emergency" motion. Hooper insists that the sanctions inquiry examines the due diligence performed by counsel, the factual correctness of his assertions, and whether the legal argument is warranted by existing law or a good-faith arguments for changing it. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S, 384, 399 (1990).[8] Hooper asserts that he is a citizen of New York for the purposes of removal based on diversity jurisdiction and has shown how the Fifth Circuit factors for domicile support his claim. Therefore there is no ground on which to find his actions sanctionable.

### Plaintiff's Reply (#11)

Plaintiff contends that Texas Rule of Disciplinary Conduct

---

[8] This Court would point out that *Cooter & Gell* was addressing sanctions under Rule 11, not § 1447(c), and the standards are quite different.  See previous footnote.

3.03 requires attorneys to be candid with the court not only in refraining from making false statements to the court, but also in disclosing facts that are contrary to the lawyers' positions so the court is not misled, especially where nondisclosure leads to a fraud on the court.  Plaintiffs charges that Hooper cannot claim that he misled the court in trying to zealously represent his client because he is the client.  Plaintiff contends that Defendant failed to tell the court the following facts:  (1) he has not lived in New York in almost five years, since his house was foreclosed in 2007; (2) he has lived in Texas consistently since February 6, 2007 when he purchased and then moved into his house in Katy, Texas with his wife; (3) his "New York office" is not listed anywhere (not on his letterhead, not on his website, not on his corporate FaceBook page, not with the Texas Secretary of State, not with the Texas Bar, not with the New York Bar, and not on any of his pleadings; instead all references are to his Texas office; (4) after leaving New York in 2007, he filed a lawsuit claiming that he and his wife purchased the Fort Bend County house because they intended to "live there and raise their kids there"; (5) after filing this lawsuit, and contrary to his assertion in this case, he swore under oath that he was a resident of Fort Bend County, Texas; (6) he owns two properties in Texas, his home and his rental property; (7) his cars are registered in Texas; (8) his full-time place of work has been in Texas since 2007; and (9) he has consistently claimed under oath

that he was a "Resident of Texas" to the Secretary of State, something a New York citizen cannot do.

Plaintiff points out that the New York driver's license submitted by Hooper, with a redacted street number and name, in Elmira, New York (#9-2, Ex. B) is not proof that he is domiciled in New York, but only confirms that he is breaking the law.[9]   As noted, Hooper moved back to Texas on February 6, 2007 when he and his wife purchased a house in Katy, Texas (#5, Ex. 10), after his home in New York state went into foreclosure that year (#11, Ex. 2).   On August 1, 2008 he and his wife moved to Fulshear, Texas (#5, Exhibit 12).   In a lawsuit that he filed for his wife in Fort Bend County, Texas on July 23, 2009, *Eleanna Hooper v. Deutsche Bank, N.A. et al.*, he stated, "In or around July, 2008, Mrs. Hooper, her husband, and daughter began seeking a house in Fulshear, Texas to reside in and raise their family" and purchased such a home within a month (#6, Ex. 15 at p.3).   Hooper owns his home and his rental property in Texas, his cars are registered in Texas, since 2007 his full-time place of work has been in Texas,

---

[9]Plaintiff observes that after Hooper moved back to Texas in 2007 he had 30 days under the Texas Transportation Code § 521.029 to surrender his New York driver's license and to obtain a Texas driver's license.   That he still uses the New York license illegally is not grounds to support removal.   Moreover it states that the address for his house in Elmyra, New York is a duplex located at 803, also known as 805, Holdridge Street (#9, Ex. 2, pp. 2-3, quitclaim deed on Holdridge property).   Although the property records for that county are not on line, Loopnet shows that the current owners are Allen and Maureen Costello.   #11, Exhibit 1).

and  he has consistently claimed under oath that he is a resident
of Texas to the Secretary of State.

### Court's Decision

Giving Hooper the benefit of the doubt and assuming, but not
finding, that Hooper met his burden to show a change in domicile
from Texas to New York, the Court concludes that Plaintiff has met
its burden to show with objective documentation that Hooper changed
his domicile from New York to Texas in 2007 and has remained
domiciled in Texas ever since.  Hooper, in turn, has failed to meet
his ultimate burden of showing that he is domiciled in New York and
that this Court lacks subject matter jurisdiction.  Plaintiff has
shown with uncontroverted documents that in 2007 Hooper's home in
New York went into foreclosure, that he and his wife moved back to
Fulshear, Texas and the next year purchased a house there,
refinanced that home in 2009, and are living there now.  In a suit
against the sellers, as attorney of record for his wife in her suit
against them, Hooper drafted and signed the pleading that stated
that his wife and he sought a home in which they intended to live
and to raise their children, and that they purchased one within a
month.  Even the facts alleged regarding Plaintiff's service of
this suit on him support his domicile in Texas.  Hooper presents no
evidence other than his redacted New York driver's license,
apparently using the address of the home that went into foreclosure
in 2007, of continuing domicile in New York, including of ongoing

full-time work in New York, ownership of New York property, paying taxes in New York, registration to vote in New York, registration of his vehicles in New York, a home in New York, the presence of his family in New York, etc.

In sum the Court concludes that Hooper is domiciled in Texas, not in New York, that there is no diversity jurisdiction here, and this case must be remanded for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c).

Plaintiff has requested an award of sanctions under Rule 11. Rule 11(c)(2) requires that a motion for sanctions be made separate from any other motion and that the movant serve a copy of such a motion on the opposing party twenty-one days before filing it with the Court.  "Compliance with the service requirement is a mandatory prerequisite to an award of sanctions under Rule 11," in order "to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention." *In re Pratt*, 524 F.3d 580, 586 and n.20 (5th Cir. 2008), *citing Elliott v, Tilton*, 64 F.3d 213, 216 (5th Cir. 1995), and *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000).  The certificate of service on the emergency motion indicates that Plaintiff failed to do so here, so the Court must deny the motion for Rule 11 sanctions.

This Court notes that title 28 U.S.C. § 1447(c) provides, "An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of

the removal [emphasis added by the Court]." *See Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010), *citing Miranti v. Lee*, 3 F.3d 925, 927-28, (opining that both costs and attorney's fees against the removing party may be imposed if the court finds that removal is improper under § 1447(c), *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)(holding that "the standard for awarding fees should turn on the reasonableness of the removal" and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal"), and *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004)(attorney's fees should be denied if an objectively reasonable basis for removal exists). According to the Fifth Circuit, the propriety of the removal should be examined "at the time of the removal, irrespective of the fact that it might ultimately be determined that the removal was improper." *Valdes*, 199 F.3d at 293. Such an award is discretionary with the court and there is no automatic entitlement to an award of fees. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). The court should focus on the propriety of the removal, not on motive. *Valdes*, 299 F.3d at 292. The court "may award fees even if removal is made in subjective good faith." *Id.*

Here at the time Hooper removed this suit he knew that he was domiciled in Texas, not New York, and there was no reasonably

-21-

objective basis for removing the case based on diversity jurisdiction. The Court finds that an award of fees and costs for services required by the wrongful removal is appropriate. Nevertheless, the Court finds that Plaintiff's counsel's affidavit is not specific enough for the Court to consider what hours were spent on what tasks and on what matters counsel expended money. Thus the Court will require additional information.

Accordingly, for the reasons indicated above, the Court

ORDERS that Hooper's motion to strike (#8) is DENIED. The Court further

ORDERS that Plaintiff's motion to remand (part of #5) is GRANTED and this case is REMANDED to the County Court at Law No. 1, Fort Bend County. The Court further

ORDERS that Plaintiff's motions to compel discovery and to extend time to conduct discovery (part of #5) are MOOT. Finally the Court finds that an award of fees and costs under § 1447(c) is appropriate, but

ORDERS Plaintiff's counsel within twenty days to supplement his affidavit with specific information about how much time and how

much money he spent on what legal services and what costs.[10]

     **SIGNED** at Houston, Texas, this  23rd  day of  February , 2012.

                            MELINDA HARMON
                UNITED STATES DISTRICT JUDGE

---

[10] This Court may retain jurisdiction to impose sanctions regardless of the existence of subject-matter jurisdiction and whether it is no longer pending. *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395 (1990); *Will v. Coastal Corp.*, 503 U.S. 131, 139 (1992).